UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARIA NAZARIO, : **CIVIL NO. 1:09-CV-1187**
:
    Plaintiff : (Judge Conner)
:
  v. : (Magistrate Judge Smyser)
:
NATIONWIDE MUTUAL :
INSURANCE COMPANY, :
:
    Defendant :

**REPORT AND RECOMMENDATION**

**Background**

This case was removed to this court from the York County Court of Common Pleas by the defendant on June 22, 2009, on the basis of the court's diversity jurisdiction. The plaintiff, Maria Nazario, is proceeding in this case by a second amended complaint[1] (Doc. 17) that was filed on October 28, 2009. Her husband, Jorge Nazario, was fatally injured in an automobile accident in York on November 13, 2005 in which he was not at fault and in which the driver at fault was uninsured. The plaintiff and Jorge Nazario were insured

---

1. The second amended complaint will be referred to herein as the complaint.

under a policy of insurance issued by defendant Nationwide Mutual Insurance Company, an Ohio corporation. Under the policy there was an uninsured motorist benefit of $25,000 each person, $50,000 each occurrence. (Doc. 17, Exhibit 3). The plaintiff here claims in two counts that the defendant acted in bad faith in handling her claim for payment to her of the $25,000 uninsured motorist benefit and that the defendant breached the insurance contract as well in that process.

An answer to the complaint was filed on December 16, 2009. (Doc. 19). The defendant filed a motion for summary judgment with supporting documentation (Doc. 25), a supporting brief (Doc. 26) and a LR 56.1 statement (Doc. 27) on March 16, 2010. The plaintiff filed a LR 56.1 statement (Doc. 29) and a brief in opposition (Doc. 30) on March 30, 2010 and an amended brief in opposition (Doc. 31) on April 5, 2010. The plaintiff's documentation is filed with her LR 56.1 statement. The defendant filed a reply brief (Doc. 35) on April 19, 2010. An oral argument on the motion was held on May 12, 2010.

**The Allegations**

The complaint alleges the following: The plaintiff's claim for uninsured benefits under the policy was handled for her by Atlee, Hart & Brookhart, LLC, a Lancaster law firm, and for the defendant by Swartz & Campbell, LLC, a Camp Hill law firm. On March 3, 2006, Christina L. Bradley, Esq., of Swartz Campbell, informed the plaintiff that she was handling the claim for the defendant "for the purpose of obtaining court approval for the settlement of the wrongful death claim. . . ." (Doc. 17, par. 10). Ms. Bradley forwarded to the plaintiff a "Petition for Leave to Approve Wrongful Death Settlement" and a proposed Release Agreement. *Id.* par. 12. Some months later, in the summer, Dan M. Brookhart, Esq., for the plaintiff, questioned the necessity of a release and questioned the legal basis for the defendant to insist upon a signed release as a prerequisite for the plaintiff to receive the uninsured motorist benefits. He requested from defendant's counsel a citation to legal authority for insisting upon a release. He received no response from the defendant's attorney. *Id.* at 14-15. On February 8, 2007, the plaintiff's attorney sent an email to the defendant's attorney demanding that the release

3

language be limited to only the uninsured motorist benefits and that the release not be stated as a "full settlement and discharge of all claims and actions of Insured against Nationwide." *Id.* at 18. Receiving not a response, he sent similar repetitive emails on March 30, 2007, April 17, 2007, April 23, 2007 and May 23, 2007 and a letter on May 25, 2007. *Id.* at 22-41. A May 29, 2007 letter to the plaintiff's counsel from the defendant's counsel sent a second Petition to Approve Wrongful Death Settlement and a second Release Agreement. The plaintiff's counsel did not approve of the revised drafts and wrote to defendant's counsel on June 14, 2007 to so state. *Id.* at 42-47. There was not a response, and on September 7, 2007, another letter was sent by the plaintiff's counsel.

By letter of September 19, 2007, defendant's counsel agreed to make changes and sent a revised draft Petition and Release Agreement. The plaintiff's counsel sent a letter to the defendant's counsel on October 18, 2007, stating in detail that the Petition and Release contained provisions not acceptable to the plaintiff. New attorneys for the defendant, Tom Ollason, Esq. and Andrew T. Kravitz, Esq., of Swartz

4

Campbell, became involved in November of 2007 in the place of Christina Bradley. *Id.* at 50-60. The plaintiff's counsel sent another letter to the defendants' counsel on April 19, 2008. There was not a response. *Id.* at 61-64. Plaintiff's counsel initiated litigation in July of 2008. *Id.* at 65-69. A hearing in the York County Court of Common Pleas was scheduled for November 17, 2008. The Court approved and entered the order submitted as a proposed order by the plaintiff's attorney. *Id.* at 65-85.

The complaint in Count One states a claim under 42 P.S. § 8371, claiming that the defendant acted in bad faith by denying the claim de facto through delay, not adequately investigating the claim, withholding reasonable assistance to the plaintiff, withholding a fair and equitable offer of benefits by insisting upon a release of "all claims and actions" despite the plaintiff's reasonable refusal to give such a broad general release, unlawfully requested a release extending beyond the subject matter of the uninsured motorist claim, ignored communications from the plaintiff, compelled the plaintiff to initiate litigation to obtain her benefits, placed

5

its own financial interests above the interests of the insured and acted without a reasonable basis for its actions.

Count Two is a claim of breach of the insurance contract.

The plaintiff seeks interest, punitive damages and attorneys' fees and costs.

In the answer (Doc. 19), the defendant denies that it intended to have the plaintiff sign a release that was not limited to her recovery of uninsured motorist coverage, disputes the plaintiff's characterizations of the draft petitions and releases generated by Swartz Campbell and does not admit the receipt by Swartz Campbell of the emails sent by the plaintiff's attorneys. The defendant denies bad faith.

## **Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual issue the determination of which will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might

7

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297

F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

**The Summary Judgment Record and the LR 56.1 Statements**

In order to prevail on the motion for summary judgment the defendant needs to show that there is not a material issue of fact in dispute. For the purpose of analyzing and deciding the motion, the court must draw all reasonable inferences in the favor of the non-moving party, the plaintiff, and must not consider any of the inferences advocated by the defendant as reasonable inferences unless it can be said in consideration of the summary judgment record that no reasonable jury could draw a contrary inference. The LR 56.1 statements in this, a bad faith case, do not lend themselves to a more condensed and digested narration of particular discrete facts that are not in dispute than the foregoing narration summarizing the complaint of each communication from the attorney for the plaintiff to the attorney for the defendant and from the attorney for the defendant to the attorney for the plaintiff. For the purposes of this motion, the foregoing summary of the efforts of the plaintiff through counsel and the lack of efforts of the

10

defendant through counsel to finalize the insurance benefits claim must be taken as true, since if these facts are in dispute and if the disputed factual issues are material then summary judgment is not appropriate. In the end analysis, in this case, the summary judgment issue is whether the history of the defendant's handling of the plaintiff's claim can be reasonably seen to support an inference of bad faith on the part of the defendant.

It is undisputed that it took approximately 32 months for the plaintiff to collect the uninsured motorist benefits under the policy. It is undisputed that she was plainly entitled to recover the benefits and that there was not at any point after the initial consideration of the essential facts any doubt that she was entitled to receive the benefits. There was not any factual issue to be resolved by Nationwide to determine her entitlement to the benefits. The insured decedent husband has not been at fault. The at-fault motorist had been uninsured. The insured loss was in excess of the uninsured benefits limit of $25,000. If there was any issue as to whether the $50,000 Each Occurrence limit was arguably

11

applicable, that was not raised by the plaintiff, and has not been raised here by the defendant as a justification for delaying the processing of the claim of the plaintiff for the payment of the $25,000 Each Person benefit.  It is undisputed that the delay resulted in large if not entire measure from the persistence of the defendant's attorneys that the plaintiff agree to language in a petition to be filed with the court and in a release to be signed by the plaintiff that would constitute "full settlement and discharge of all claims and actions of the Insured for damages arising out of or due to the Occurrence."  We do not see that there was a necessity from the perspective of Nationwide to preserve its valid interests for it to have a release from the plaintiff containing this or substantially this language.  We do not see it to be an inference free from dispute, in any event, that it was necessary and appropriate for Nationwide to have this form of release from the plaintiff before it could, with reasonable assurance against future claim(s) against it by her, pay the benefits to her.

12

**The Bad Faith Cause of Action**

The plaintiff's bad faith claim is based upon 42 P.S. § 8371, which provides:

> In an action arising under an insurance policy, if the court finds that an insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the first date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

The Court of Appeals for the Third Circuit has stated the standard as follows:

> The standard for bad faith claims under § 8371 is set forth in *Terletsky v. Prudential Property & Cas. Ins. Co.,* 437 Pa.Super. 108, 649 A.2d 680, 688 (1994), *appeal denied,* 540 Pa. 641, 659 A.2d 560 (1995). There, the Pennsylvania Superior Court applied a two-part test, both elements of which must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis.

13

*Klinger v. State Farm Mutual Automobile Insurance Company,* 115 F.3d 230, 233 (3d Cir. 1997).

The defendant asserts that there is not a genuine dispute as to a material factual issue and that the summary judgment evidence shows that the delays were attributable to simple negligence and are in any event attributable to Nationwide's counsel and not to Nationwide. The defendant also asserts that the draft release was not a release that in violation of 31 Pa. Code § 146.4(e) extended beyond the subject matter giving rise to the claim payment and that it contemplated no more than the plaintiff's release of Nationwide. The defendant asserts that the release was not amenable to an interpretation that it released other tortfeasors or that it released Nationwide as to any potential bad faith lawsuit.

In the plaintiff's brief, the plaintiff advances arguments that the manifestations of the defendant's bad faith are that Nationwide's staff did not handle a claim of a Nationwide insured with any higher level of care and attention

14

than it did a claim of a third party; i.e., a party not insured by Nationwide; that Nationwide did not adequately train its personnel to understand that counsel hired by Nationwide are counsel to Nationwide and not counsel to the insured; that Nationwide wrongfully required the plaintiff here to sign a release when it had stopped requiring releases of its insureds in similar circumstances; that the failures of Swartz Campbell attorneys to respond to the communications from the plaintiff's counsel and failure to provide a reasoned justification for the releases' language was without a reasonable basis and is attributable to the defendant; that the release language was used by the defendant as a "sword against the insureds in subsequent bad faith actions"; that the defendant did not consider that there were conflicts of interest of itself and its insured that the defendant ignored or overlooked in the processes involved in this case; and, that the defendant willfully or recklessly buried its head in the sand as to the delays of its attorneys in effecting the payment to the plaintiff of the $25,000 to which she was entitled under the policy.

It would be a reasonable inference for a jury to draw that a 32 month delay in paying the insurance benefit to the plaintiff to which the plaintiff was entitled is an unreasonable delay and is the result of bad faith. No outside agency caused this delay. The delay is not attributable to a lengthy necessary investigation, to awaiting a resolution of a related separate claim or matter, or to a court delay. A 32 month delay by an insurer in paying a benefit under the insurance policy supports a finding made by a fact finder using a clear and convincing filter that the insurer failed to process the claim in good faith.

The opinions of Herman A. Gailey, III, Esq. and of Barbara J. Sciotti (Doc. 29, Exhs. I & J) are a part of the summary judgment evidence. The inferences that can be drawn from these opinions by a reasonable fact finder are that a process that should have taken about three months took three years, that there was not a need for the multiple difficulties and delays that developed in the handling of what should have been a simple administrative task, that Nationwide through Swartz Campbell insisted on release language which prejudiced

16

the insured's rights and went beyond the transaction at hand, that the conduct of Nationwide was outside of the customary standards of practice in the industry and that Nationwide was indifferent to its duties of good faith and fair dealing.

The plaintiff's brief (Doc. 31) contains, at pages 6 to 23, a discussion of the seven aspects of the handling of the claim by the defendant that the plaintiff reasonably construes as indicative of the defendant's lack of a reasonable basis for not paying the benefits for nearly three years and of the defendant's knowledge of or reckless disregard of its lack of a reasonable basis.  Each of these might in this case plausibly be permitted by the court at trial to be presented by the plaintiff to the jury and each may be seen by the jury to support the plaintiff's claim of insurer bad faith.  The defendant's brief meets the plaintiff's theories in three essential ways: by assigning responsibility to its attorneys for delays and positions taken as negating the appearance of its own bad faith, by asserting that the releases drafted by its attorney did not intend to address any potential claim other than claims against Nationwide, and by asserting that the

17

extent and nature of the training of its employees, and those employees' consequential understanding of the claims process, is irrelevant to the issue of the company's good faith. None of these assertions by the defendant justifies summary judgment in favor of the defendant on the bad faith claim. These assertions are essentially factual assertions and, in conflict with the plaintiff's assertions as they are, show that there are issues that the fact finder must decide. For the court to find it to be free from dispute that counsel's actions and inactions were entirely independent of and are not reasonably attributable to the defendant would involve the court in fact finding that the summary judgment record does not support. For the court to determine that the documents drafted by the defendant's attorneys and the process followed by the plaintiff's attorneys had the purpose and effect only of protecting good faith interests of the defendant would also involve fact finding not supported by the summary judgment record. For the court to evaluate the defendant's employee training processes or the conduct and understandings of its employees would similarly involve fact finding as to disputed issues. The plaintiff's evidence and reasonably proffered

18

inferences, if accepted by the fact finder, would support a finding of bad faith.

The defendant argues that as to the breach of contract claim, Count II, there is not a material factual issue genuinely in dispute and that it is entitled to judgement as a matter of law.

The complaint, Count II, does not state a specific theory of breach of contract. It does not refer to a particular contractual promise that was breached. The brief in support of the defendant's motion for summary judgment includes an argument that no conduct of the defendant breached the insurance contract of the plaintiff and Nationwide. The brief of the plaintiff in opposition to the defendant's motion for summary judgment does not respond to the defendant's argument that the defendant is entitled to summary judgment as to the plaintiff's Count II. There is not a basis presented to find that the defendant is not entitled to judgment as a matter of law as to Count II. *See Celotex, supra*, 477 U.S. at 323.

For the foregoing reasons, it is recommended that the defendant's motion for summary judgment be denied as to Count I (bad faith) and granted as to Count II (breach of contract).


*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge


Dated: May 17, 2010.